# Exhibit A

MERCHANT PROCESSING
AGREEMENT

The parties to this agreement are ("Net"); Netpaying, Inc., a Florida Corporation, whose address is 8222 118ᵃ Ave N Largo, Florida 33773; and MERCHANT whose name and address Just Think Media is 11 Athabascan Av, #240, Sherwood PK, AB ("Merchant").

In consideration of the mutual promises and covenants contained in this Merchant Agreement ("Agreement"), the parties agree as follows:

1. Definitions: For the purpose of this Agreement and the Schedules referred to herein, the following definitions apply unless the context explicitly requires otherwise:

    a. Business Day shall mean any day other than (i) Friday or Saturday, or (ii) a holiday
    b. Charge back shall mean any debit of net by the Credit Card Association or, by a Credit Card Issuer, in accordance with the Credit Card Association's regulations.
    c. Merchant Statement shall mean itemized statement of all charges and credits to the Operating Account
    d. Pre-Authorized Recurring Order Transactions shall mean Transactions that have been pre-authorized by the Cardholder and for which the goods or services are to be delivered or performed in the future by Merchant without having to obtain approval from the Cardholder each time.
    e. Transaction shall mean the acceptance of a Card or information embossed on the Card, for payment for goods sold and/or leased and/or services provided to Cardholders by Merchant, and receipt of payment from net, whether the Transaction is approved, declined, or processed as a forced sale. The term "Transaction" also includes credits, errors, returns and adjustments. A transaction may be done only in the currencies listed in the application.

2. Merchant agrees to participate in the card processing services program established by Net.

3. In the performance of its duties hereunder, Netpaying, Inc. Net shall be an independent contractor and has no responsibility for sales content, use and advertisement of products and services.

4. Compliance with association rules: Merchant agrees to comply with the bylaws, rules, regulations, policy statements and guidelines of the Card Associations.

5. Term: This Agreement shall become effective when signed by all parties and, unless sooner terminated, shall remain in effect for a term of one (1) year. This Agreement shall renew automatically for a successive term of one (1) year, unless any party provides written notice of termination to the other parties at least 14 days prior to the end of the then-current term. All existing obligations, warranties, indemnities and agreements with respect to Transactions entered into before such termination shall remain in full force and effect, and Merchant shall remain liable for all obligations to Cardholders and Net incurred while this Agreement was in effect.

6. Merchant shall establish a demand deposit account at a financial institution designated by Net ("Operating Account"), through which fees, charges and credits due in accordance with this Agreement may be processed. Merchant authorizes Net to debit all amounts Merchants owes or Net hereunder from the Operating Account, at times deemed appropriate by Net. Merchant waives any claims for loss or damage arising out of any charges or debits to the Operating Account against any other financial institution where the Operating Account is maintained. Merchant may not make any changes in Operating Account without Net consent.

7. Upon, or at any time after, execution of this Agreement, Net may establish a Merchant Reserve Account at any financial institution ("Merchant Reserve Account") for all future indebtedness of

Initial

1

Merchant to Net that may arise out of or relate to the obligations of Merchant under this Agreement, including, but not limited to, Chargebacks and fees, in such amount as Net from time to time may determine in its sole discretion. Net may fund the Merchant Reserve Account by deduction from payments due to Merchant or a charge against Merchant's Operating Account or against any of Merchant's accounts at Net. The Merchant Reserve Account will be maintained for a minimum for a 6 month period after the date on which this Agreement terminates or until such time as Net determines that the release of the funds to Merchant is prudent, in the best interest of Net, and commercially reasonable, and that Merchant's account Net is fully resolved. Upon expiration of this 6-month period (or longer, as the case may be), any balance remaining in the Reserve Account will be paid to Merchant.

8. Merchant shall pay Net all fees specified on Annex A as amended by Net, from time to time. For each transaction, Net will charge Merchant as:

   a. An amount equal to a specified percentage of the total cash price of each Transaction ("Merchant Discount Rate");
   b. A specified amount per Transaction ("Transaction Fee");
   c. A specified amount per Authorization ("Authorization Fee");

The Merchant Discount Rate, Authorization Fees and Transaction Fees are set forth on Annex A. The Merchant Discount Fees are based on sales, not net sales. Merchant agrees that Net will deduct Merchant Discount Fees from the Operating Account or Merchant Reserve Account on a daily basis. Merchant also agrees to pay Net the amount of any fees, charges, fines or penalties assessed against Net by any Card Association or Issuer for Merchant's violation of the by-laws, rules, regulations, guidelines, policy statements or threshold requirements of such parties. Merchant shall pay Net for any other services provided to Merchant by Net and for all other fees, including, but not limited to monthly services fees, Chargebacks and set-up fees provided for in this Agreement, as shown on Annex A.

9. <u>Document Transactions</u> Merchant shall submit the following information to Merchant shall pay net all fees specified on Annex A as amended by Net
In connection with Transaction processing:

   a. The DBA ("Doing Business As") name of Merchant, name of Merchant and Merchant's address;
   b. Merchant's customer service telephone number if the Transaction is a mail, telephone or Internet Transaction;
   c. The Merchant's Internet address and e-commerce indicator;
   d. The Merchant's Number assigned to Merchant by Net
   e. The Card account number, validation date and/or expiration date of the Card, if one appears on the Card;
   f. The address and telephone number of Cardholder and Visa CVV@ or MasterCard CVC2 number if the Transaction is a mail, telephone or Internet Transaction;
   g. The Name, address and telephone number of Cardholder; and
   h. Such additional information as may from time to time be required by Net and/or the relevant Issuer.

10. <u>Authorization for Full Recourse Transactions</u> Merchant shall obtain Authorization of Transactions as follows:

   a. All Full Recourse Transactions are at Merchant's risk. As to each Full Recourse Transaction, Merchant warrants to Net that the person whose name is submitted to net as Cardholder made the purchase. Upon breach of this warranty, Net may charge back the Transaction to Merchant. If Net charges back the Transaction to Merchant: (i) Merchant shall pay Net the amount of the Transaction, any Chargeback fee on Annex A plus any



2

Card Association fine or assessment; (ii) Net may charge all such amounts to the Operating Account or Merchant Reserve Account without prior notice to Merchant;

b. All Full Recourse Transactions must be electronically authorized via Software application and in addition to the information required in Section 19 of this Software Agreement, each such request for Authorization also shall include: (i) an Authorization code, if required; (ii) the Cardholder's address and Address Verification results; and (iii) in lieu of the Cardholder's signature, a notation of (A) mail order (MO), (B) telephone order (TO), (C) e-commerce order (EO), or (D) pre-authorized order (PO) on the signature line;

c. If Merchant accepts a Pre-Authorized Recurring Order Transaction, the Cardholder shall execute and deliver to Merchant a written request for this pre-authorization. This written request shall be maintained by Merchant and made available upon request to All Full Recourse Transactions. All annual billings must be reaffirmed at least once a year. Merchant shall not deliver goods or perform services covered by a pre-authorization order after receiving notification from the Cardholder that the pre-authorization is cancelled or from Net that the Card covering the pre-authorization is not to be honored;

11. Merchant shall not do any of the following with respect to any Transaction:

   a. Impose a surcharge or Cardholder who elects to use a Card in lieu of payment in cash, check or other mode of payment;
   b. Charge a Cardholder more than the amount of Cardholder would pay if payment were made by cash or check;
   c. Establish a minimum dollar Transaction amount;
   d. Obtain multiple Authorizations for amounts less than the total sale amount;
   e. Obtain Authorization for purposes of setting aside Cardholder's credit line for use in future sales;
   f. Extend credit for or defer the time of payment of the total cash price in any Transaction;
   g. Honor a Card except in a Transaction where a total cash price is due and payable;
   h. Make any special charge to or extract any special agreement or security from any Cardholder in connection with any Transaction;
   i. Make any special charge to or extract any special agreement or security from any Cardholder in connection with any Transaction;

12. Prohibition of Furnishing Account Information  Merchant shall not, without the Cardholder's consent, sell, purchase, provide or exchange Card account number information in the form of Transaction documents, carbon copies of imprinted Transaction documents, mailing lists, tapes, journal rolls or other media obtained by reason of a Card to any third party.

13. Reconciliation of Transactions

   a. Electronically Transmitted Transactions  Transactions will be settled in accordance with Annex A. Net shall deliver payment to Merchants as soon thereafter as practicable by a credit to the Operating Account equal to the reconciled summary Transaction total of all of Merchant's total summary Transactions since the previous credit. This credit will be reduced, if necessary, by: (i) the sum of all Cardholders charged denied, refused or
   b. charged back; (ii) all refunds processed on account of Cardholders during said time period; (iii) the fees and charges, including Chargebacks, Merchant owes Net; (iv) all taxes, penalties, fines, charges and other items incurred by net that are reimbursable pursuant to this Agreement; and (v) all rates, fees and charges described on Annex A.

14. Chargebacks  The acceptance by Net of any Transaction processed in accordance with the terms of this Agreement shall be without recourse to Merchant, except for: (i) Full Recourse Transactions; (ii) as otherwise indicated in this Agreement and (iii) as follows;

Initial

3

a. No specific prior Authorization for the Transaction was obtained from the Authorization Center, the approval number does not appear in the electronic transmittal that is maintained by Net, or the Transaction was submitted to Net or thirty (30) days or more after the date on which the goods and/or services to which the Transaction relates were purchased.

15. Merchant Statement  At least once per month, Net shall provide Merchant with a Merchant Statement. All information appearing on the Merchant Statement shall be deemed accurate and affirmed by Merchant unless Merchant objects by written notice specifying the particular items in dispute within 30 days of the date of the Merchant Statement.

16. Retention of Original Sales Information  Merchant shall return the information required for seven years from the date of the Transaction. At that request of Net, Merchant shall provide such information to Net, as directed by Net, within five (5) days of receipt of a request from Net.

17. Merchant shall treat all information received in connection with this Agreement as confidential. Merchant shall prevent the4 disclosure of this information except if required so by this Agreement or by law, and not before Net.

18. Compliance with Applicable Law  Merchant represents and warrants that it has obtained all necessary regulatory approvals, certificates and licenses to sell any product or provide any service it intends to offer. Merchant shall comply with all present and further federal, state and local laws and regulations pertaining to Transactions.

19. Taxes  Each party hereto shall report its income and pay its own taxes to any applicable jurisdiction. If Net is required to pay any taxes, interests, fines or penalties owned by Merchant, said amount shall become immediately due and payable by Merchant to Net. If excise, sale or use taxes are imposed on the Transactions, Merchant shall be responsible for the collection and payment thereof. Net shall be entitled to recover any of said taxes paid by it on behalf of Merchant from Merchant immediately after payment.

20. Limit of Liability  In addition to all other limitations on the liability of Net contained in this Agreement, neither Net or any other parties shall be liable to Merchant for Merchant's customers or any other person for any of the following:
    a. Any loss of liability resulting from the denial of credit to any person or Merchant's retention of nay Card or any attempt to do so;
    b. Any loss caused by a Transaction downgrade resulting from defective or faulty Software;
    c. The unavailability of Services caused by the termination of contracts with computer hardware vendors, processors or installers whether terminated by Net or any other person for any reason;

NEITHER NET OR ANY OTHER PARTIES SHALL BE LIABLE FOR ANY LOST PROFITS, PUNTIVE, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES TO MERCHANT OR TO ANY THIRD PARTY IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE SERVICES TO BE PERFORMED BY NET PRUCUSNT TO THIS AGREEMENT. MERCHANT ACKNOWLEDGES THAT NET HAS PROVIDED NO WARRANTIES, EITHER EXPRESSED OR IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO ANY SOFTWARE INSTALLED OR PROVIDED BY NET AND THAT NET HAS NO LIABLITY WITH RESPECT TO ANY SOFTWARE. NET MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICVES IT PROVIDED HEREUNDER. SHOULD THERE BE ERRORS, OMISSIONS, INTERRPUTIONS OR DELAYS RESULTING FROM NET'S PERFORMANCE OR FAILURE TO PERFORM OF ANY KIND, NET'S LIABILITY SHALL BE LIMITED TO CORRECTING SUCH ERRORS IF COMMERCIALLY REASONABLE OR SUPPLYING SUCH OMMISSIONS IN THE WORK PRODUCT IN WHICH THEY HAVE OCCURRED.


Initial

21. <u>Limitations on Damages</u>  In no case shall Merchant be entitled to recover damages from Net that exceed the fees retained by Net pursuant to this Agreement during the one month period immediately prior to the event giving rise to the claim for damages.

22. <u>Indemnification</u>  Merchant agrees to indemnify and hold Net harmless from any and all losses, claims, damages, liabilities and expenses, including attorneys' fees and costs (whether or not an attorney is an employee of Net's) affiliates.

23. <u>Assignment</u>  This Agreement may not be assigned by Merchant without the prior written consent of Net. Net may assign this Agreement without limitation. Assignment of this Agreement by Net shall relieve Net of any further obligations under this Agreement.

24. <u>Financial Accommodations</u>  Net and Merchant intend for this Agreement to be construed as a contract to extend financial accommodations for the benefit of Merchant.

25. <u>Waiver</u>  To the extend that Merchant become a debtor under any law regarding liquidation and/or bankruptcy, and such event does not result in the termination of this Agreement, Merchant hereby unconditionally and absolutely waives any right or ability that Merchant may otherwise have had to oppose, defend against or otherwise challenge any motion filed by Net for relief from any automatic stay granted by law, to enforce any of Net's rights or claims under this Agreement.

If to NET:
Net – Netpaying, Inc.
8222 118th Ave N
Largo, Florida 33773

With a Copy to:
Jugal K Taneja
6911 Bryan Dairy Rd
Largo, Fl. 33777

If to Merchant:
The undersigned Merchant

26. In their dealings with one another, each party agrees to act reasonable and in good faith and to fully cooperate with each other in order to facilitate and accomplish the transactions contemplated hereby.

27. This Agreement, together with the Annexes attached hereto, supersedes any other agreement, whether written or oral, that may have been made or entered into by any party (or by any officer or officers of any party) relating to the matters covered herein and constitutes the entire agreement of the parties hereto. Notwithstanding an agreement between Net or between Net and Merchant that explicitly provides otherwise shall prevail.

28. <u>Severability</u>  If any provisions of this Agreement shall be help, or deemed to be, or shall in fact be, in operative or unenforceable as applied in any particular situation, such circumstance shall not have the effect of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable to any extend whatsoever. The invalidity of any one or more phrases, sentences clauses or sections herein contained shall not affect the remaining portions of this Agreement or any part hereof.

29. <u>Notices</u>  Except for notices provided by Net to Merchant on the Merchant Statement, all notices, requests, demands or other instruments which may or are required to be given by any party hereunder shall be in writing and each shall be deemed to have been properly given when (i) served personally on an office of the party to whom such notice is to be given, (ii) upon expiration of a period of three (3) business days from and after the date of mailing thereof when mailed postage prepaid by registered or certified mail, requesting return receipt, or (iii) upon delivery by a

5

nation recognized overnight delivery service, addressed as follows: Any party may change the address to which subsequent notices are to be sent by notice to the others given as aforesaid.

30. This agreement shall be governed and construed in accordance with the laws of the State of Florida.

31. <u>Force Majeure</u>  The parties shall be excused from performing any of their respective obligations under this Agreement which are prevented or delayed by any occurrence not within their respective control including but not limited to strikes or other labor matters, destruction of or damage to any building, natural disasters accidents, riots or any regulation, rule, law ordinance or order of any federal, state or local government authority.

### MERCHANT ACCEPTANCE

By executing this Merchant Agreement (the "Merchant"), the undersigned individual(s): (i) represent(s) and warrant(s) that all information contained in this Merchant Agreement is true, correct and complete as the date of this Merchant Application and that such individual(s) have the requisite corporate power and authority to complete an submit this Merchant Application and make and provide the acknowledgements, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledges that the information contained in this Merchant Agreement is provided for the purpose to obtaining or maintaining a merchant account with Net, (iii) authorize Net to investigate the credit and legal history of the Merchant and each person listed on this Merchant Agreement or signing the Personal Guarantee and (iv) agree, on behalf of the Merchant and in the event this Merchant Agreement is accepted and executed by Net, to all the terms and conditions set forth in the Merchant Agreement attached to this Merchant Agreement and the schedule set froth above. By executing this Merchant Agreement, each of Net and bank accept this Merchant Agreement Application Page. As provided in Section 6.6., of the term of this Agreement shall be one (1) year. Merchant may terminate this Agreement, in accordance with the procedures of Section 38, without cause or penalty within 45 days after the Agreement becomes effective, after which time termination or abandonment of the Agreement without cause may result in assessment of Early Termination Fees.

**Merchant**

Principal # 1 _____  Title __CEO__
                                    PRESIDENT

_Initial_

## INTERVENTION BY GUARANTOR

The Guarantor hereby intervenes and agrees, by signing this Schedule, to guarantee jointly and severally, unconditionally and irrevocably, the continuing full and faithful performance and payment of Client of each of its duties and obligation to Net pursuant to the Agreement, whether or not Guarantor has a current direct affiliation with the Client or has accurate knowledge of the Client's activities with respect to the Processing Services, whether or not before or after termination or expiration and whether or not Guarantor has received notice of any amendment. If Client breaches this Agreement, Net may proceed directly against the Guarantor or any other persons or entity responsible for the performance of the Agreement without first exhausting its remedies against any other person or entity responsible therefore to it, or any security help by Net. Guarantor agrees that any liability not be limited to cancelled on the basis that (o) the Agreement cannot be enforced against the Client; (ii) the Client or Net agrees to changes in the terms of the Agreement, (iii) Net releases the Client; or any other guarantor, from any of their obligations; (iv) any Regulatory Authority or law, regulation, or order affects Client's or Net's rights under the Agreement; and/or (v) anything else happens that may affect Net's rights against the client or any other guarantor; and, in each case, whether or not Guarantor is so advised or notified.

Guarantor further agrees that (i) Net can delay enforcing any of its rights under this guaranty without losing them; (ii) Net can demand payment from Guarantor without first seeking payment from the Client or any other guarantor; and (iii) Guarantor will pay all court costs, attorneys' fees and collection costs by Net in connection with enforcement of the Agreement and this Schedule, whether or not there is a lawsuit, and such additional fees and costs as may be directed by a court, Client and Guarantor agree that, if and when wither Client or Guarantor fails to pay any amount as provided in the Agreement or in any other agreement between Net and Client (or any principal of Client), or fails to satisfy any liability or to fulfill any obligation there under promptly when required (collectively, an "Unpaid Obligation"), Net shall have the right at any time and following notice to Client and Guarantor, at Net's sole discretion either (i) to set-off and apply against the Unpaid Obligation any sums at any time credited by or owing from Net to Guarantor sufficient to satisfy the Unpaid Obligation or any portion thereof; or (iii) to make demand upon Guarantor for immediate payment of the Unpaid Obligation or portion thereof, with which demand Guarantor immediately shall comply. The rights and remedies of Net hereunder are in addition to other rights and remedies (including, without limitation, other rights of set-off) that Net may have, and Guarantor agrees that the terms of this intervention by Guarantor shall take precedence in the event of any conflict between the terms of this intervention by Guarantor and the terms of any other agreement, including any agreement between Net and Guarantor.

If Guarantor is a corporation, limited liability or any other entity other than an individual, the individual signing this Schedule on behalf of Guarantor represents and warrants that he or she has authority and hereby intends to bind the Guarantor to the obligations set forth herein and shall be personally liable for such obligations in the event he or she subsequently is alleged or determined not to have such authority or intent.

Signature (Principal #1)                                Signature (Principal #2)

_____, an individual            _____, an individual

_Jesse Willms_ Date _June 9/09_              _____ Date _____
Printed Name                                             Printed name

Name and Title (If Guarantor is a company) _CEO_   Name and Title (If Guarantor is a company) _____

7

## CORPORATE CERTIFICATION

I certify that I am elected and qualified <u>PRESIDENT</u> (title) of the corporation whose full legal name appears on the Merchant Agreement. I certify that the corporation has duly adopted, in accordance with the corporation's articles and bylaws, a resolution that is still in force and effect that authorized me and any of the following person(s) to act on behalf of the corporation. I further certify that Bank and Net may reply on this authorization until either or both receive actual notice of any change and further certify that the following are the name(s), genuine signature(s) of the person(s), other than me, so authorized.

Signature _[signature]_ Title _CEO_

Printed Name _Jesse Willms_

Signature _____ Title _____

Printed Name _____

8

MERCHANT ACH FORM

Date: JUNE 8, 2009

**AUTHORIZATION FOR AUTOMATIC FUNDS TRANSFER (ACH):**
Netpaying is authorized to initiate or transmit automatic credit and/or debit entries to the account identified in the "*attached voided check*" relating to the following account:

BANK NAME __HSBC__ ROUTING # __125007098__ ACCT# __446 018 627__

Legal Bus.Name of Applicant __1021018 ALBERTA LTD.__
Mailing Address __#240, 11 ATHABASCAN AVENUE__
City_____ State_____ Zip __SHERWOOD PARK, ALBERTA, CANADA   T8A 6H2__
DBA Name __JUST THINK MEDIA__
Physical Address __SAME__
City_____ State_____ Zip_____
Phone( )_____ Fax( )_____ PHONE: 780-416-0211 FAX: 780-416-0218
E-Mail Address_____ Contact Name __JD.JESSE@YAHOO.COM / JESSE D. WILLMS__
Business Hours_____ 8:00 - 4:30 MST
Fed Tax ID# (EIN) __899883102__ Length Owned __7__ Years
Type of entity  O Proprietorship ⊗ Corporation  O LLC  O Gen Partnership  O LTD  O other

The undersigned certify and affirm, under penalty of perjury, that all changes and/or instructions contained herein have been fully authorized and approved by the Board of Directions or other managing body or person of the Merchant. Signature of Authorized Merchant Principal (as specified by the Merchant Agreement). Change request will not be completed unless the merchant completes all pertinent information above and signature verified.

**SIGNATUURES**

Merchant Signature _____ Date __JUNE 8, 2009__
Print Name __JESSE D. WILLMS__
Guarantor _____ Date __June 8/09__


Initial

## ANNEX A

### SETTLEMENT, RATES, FEES AND CHARGES

Settlement:
Transactions shall be settled on a weekly basis, four business days in arrears.

1. Merchant Discount Rates:
   Merchant shall be charged the following Merchant Discount Rates:
   Visa        4.61%
   Mastercard  4.64%

   The Merchant Discount Fees will be deducted from the Merchant's account(s) on a daily basis.

2. Merchant Transaction Fees
   Merchant shall be charged the following Transaction Fees:
   Each Visa        $0.29
   Each Mastercard  $0.29

   The Transaction Fee shall be payable on each approved or declined authorization attempt, as well as each refund or void request. The Transaction Fees will be deducted from the Merchant's account(s) on a daily basis.

3. Other Fees. Merchant will be charged the following other fees:
   Chargeback Fee:       $15.00
   Settlement Fee        $ 0.05
   Monthly Statement Fee $10.00

4. Reserve
   10% Rolling reserve for six (6) months

5. Funding
   Twice a week (Wednesday & Friday) by wire transfer
   FUNDS TRANSFER INFORMATION  (See Attached Merchant ACH Form)



9

MERCHANT ACH FORM

Date: JUNE 8, 2009

**AUTHORIZATION FOR AUTOMATIC FUNDS TRANSFER (ACH):**
Netpaying is authorized to initiate or transmit automatic credit and/or debit entries to the account identified in the "*attached voided check*" relating to the following account:

BANK NAME HSBC   ROUTING # 125007098   ACCT# 446 018 627

Legal Bus. Name of Applicant 1021018 ALBERTA LTD.
Mailing Address #240, 11 ATHABASCAN AVENUE
City _____ State _____ Zip _____ SHERWOOD PARK, ALBERTA, CANADA  T8A 6H2
DBA Name JUST THINK MEDIA
Physical Address SAME
City _____ State _____ Zip _____   PHONE: 780-416-0211  FAX: 780-416-0218
Phone( ) _____ Fax( ) _____   Contact Name JD.JESSE@YAHOO.COM / JESSE D. WILLMS
E-Mail Address _____
Business Hours _____   8:00 – 4:30 MST
Fed Tax ID# (EIN) 899883102   Length Owned 7 Years
Type of entity: O Proprietorship ⊗ Corporation O LLC O Gen Partnership O LTD O other

The undersigned certify and affirm, under penalty of perjury, that all changes and/or instructions contained herein have been fully authorized and approved by the Board of Directions or other managing body or person of the Merchant. Signature of Authorized Merchant Principal (as specified by the Merchant Agreement). Change request will not be completed unless the merchant completes all pertinent information above and signature verified.

**SIGNATUURES**

Merchant Signature _____ Date JUNE 8, 2009

Print Name JESSE D. WILLMS

Guarantor _____ Date _____

*Can you do this asap please?*
*Thanks*
*Jesse*

[Initial]

10