UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**1021018 ALBERTA LTD.**
**d/b/a JustThinkMedia,**

<blockquote>

**Plaintiff,**

</blockquote>

vs.                                                                       **Case No. 8:10-CV-568-T-27MAP**

**NETPAYING, INC., et al.,**

<blockquote>

**Defendants.**

</blockquote>

_____/

## ORDER

**BEFORE THE COURT** are: (1) Defendants' Motion to Dismiss Plaintiff's First Amended

Complaint and in the Alternative Motion to Strike (Dkt. 16), to which Plaintiff has responded (Dkt.

17); and (2) Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. 42), to which

Defendants have responded (Dkt. 44).   Upon consideration, Defendants' Motion to Dismiss

Plaintiff's First Amended Complaint and in the Alternative Motion to Strike is GRANTED in part

and Plaintiff's Motion for Leave to File Second Amended Complaint is GRANTED.

### *Background*

The Amended Complaint (the "Complaint" [Dkt. 14]) includes the following allegations.

Plaintiff sells various products and services on the internet and designs marketing campaigns for

those products and services.  (Dkt. 14 ¶ 2)  Plaintiff's products and services are sold through its

website. *Id.* ¶ 13.  When a consumer decides to purchase Plaintiff's goods or services and completes

a transaction, the consumer's credit card is charged. *Id.* ¶ 14.  Plaintiff's customers are also charged

when their subscriptions to certain services offered by Plaintiff are automatically renewed. *Id.*

Plaintiff engages third parties ("merchant processors") to manage these credit card transactions. *Id.* ¶ 15. When a consumer purchases Plaintiff's goods or services, a merchant processor collects the consumer's information (*e.g.*, credit card number) from Plaintiff's website and communicates the information to the consumer's credit card issuer. *Id.* If the information is valid, the issuer charges the consumer's credit card and credits the merchant processor with the amount of the sale; if, not, the issuer declines the transaction. *Id.* In either case, the information is communicated to the merchant processor, and ultimately the merchant processor transfers the funds from valid sales (after deducting its payment) to Plaintiff. *Id.*

Defendant Netpaying, Inc. ("Netpaying") is a merchant processor. *Id.* ¶¶ 3, 16. The Complaint alleges on information and belief that Defendants Jugal and Mihir Taneja are officers, directors, or shareholders of Netpaying. *Id.* ¶¶ 5-6.

Following negotiations involving Plaintiff and the Tanejas, Netpaying entered into a payment processing agreement (the "Agreement") with Plaintiff on June 9, 2009. *Id.* ¶¶ 17-18. The Agreement was partly memorialized in a written Merchant Processing Agreement (Dkt. 14-1). *Id.* ¶ 20. However, the Merchant Processing Agreement did not include all the terms of the Agreement. *Id.* Other terms were memorialized in email correspondence between the parties. *Id.*

The Agreement provided in relevant part that Netpaying would: (1) maintain for a period of six months a "10% 'rolling reserve,'" *i.e.*, a reserve account funded by deductions from payments due to Plaintiff (or by charges against Plaintiff's operating account) to cover any indebtedness of Plaintiff to Netpaying arising out of the Agreement (*e.g.*, indebtedness arising from chargebacks); and (2) pay proceeds to Plaintiff twice per week by wire transfer. *Id.* ¶ 18.

Plaintiff generated over $10 million in revenue through product sales for which Defendants

processed the payments. *Id.* ¶ 21. Initially, Defendants paid Plaintiff more than $5 million for customer payments received and processed by Defendants. *Id.* ¶ 22.

Some time around July 2009, Defendants stopped making payments to Plaintiff. *Id.* ¶ 23. At first, Defendants responded to Plaintiff's inquiries by representing that Defendants could not forward the amounts due because Defendants' merchant banks had refused payment on a number of charges from Plaintiff's customers. *Id.* However, Defendants failed to respond to Plaintiff's inquiries in a satisfactory manner and failed to provide Plaintiff with any explanation or reckoning as to how Defendants had calculated the payments or reserves withheld. *Id.* Ultimately, Defendants ceased communications with Plaintiff. *Id.*

Plaintiff alleges on information and belief that Defendants owe Plaintiff more than $1 million in payments processed by Defendants, in addition to $1 million previously held in reserve pursuant to the Agreement but now due. *Id.* ¶ 25. Additionally, Plaintiff alleges that Defendants failed to process some automatic subscription renewals for Plaintiff's customers during several weeks in July and August, 2009, which cost Plaintiff additional revenue. *Id.*

The Complaint asserts a claim for breach of contract against Netpaying (Count I) based on Netpaying's alleged failure to (a) pay funds received from or on behalf of Plaintiff's customers (less applicable processing fees), (b) failure to comply with express or implied terms of the Agreement requiring Netpaying to return the unused portion of the reserve funds once the parties' business relationship terminated and thus "the objective of the contract – to secure amounts due to Plaintiff from Defendants – had been fulfilled," and (c) to process renewals of Plaintiff's customer subscriptions. *Id.* ¶¶ 28-31. Additionally, the Complaint asserts claims against all Defendants for conversion (Count II), money had and received (Count III), civil theft pursuant to Fla. Stat. § 772.11

(Count IV), and unjust enrichment/constructive trust (Count V). The Complaint seeks compensatory damages, treble damages pursuant to Fla. Stat. § 772.11, preliminary and permanent injunctive relief, a constructive trust, appointment of a receiver, punitive damages, costs, and attorneys' fees pursuant to Fla. Stat. § 772.11.

### *Discussion*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). A conclusory statement of the elements of a cause of action will not suffice to state a claim under Rule 8. *Id.* at 1950. A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### *Count I (Breach of Contract)*

To state a claim for breach of contract under Florida law, Plaintiff must allege: (1) a valid contract, (2) a material breach, and (3) damages. *Merin Hunter Codman, Inc. v. Wackenhut Corrs. Corp.*, 941 So. 2d 396, 398 (Fla. 4th DCA 2006).

Defendants contend that Plaintiff's allegation that the Agreement's provision relating to reserve funds was enforceable by Plaintiff contradicts the written terms of the Merchant Processing Agreement. Defendants rely on the following provision:

Upon, or at any time after, execution of this Agreement, Net[1] may establish a Merchant Reserve Account at any financial institution . . . for all future indebtedness of [Plaintiff] to Net that may arise out of or relate to the obligations of [Plaintiff] under this Agreement, including, but not limited to, Chargebacks and fees, in such amount as Net from time to time may determine in its sole discretion. Net may fund the Merchant Reserve Account by deduction from payments due to [Plaintiff] or a charge against [Plaintiff's] Operating Account or against any of [Plaintiff's] accounts at Net. The Merchant Reserve Account will be maintained for a minimum for a 6 month period after the date on which this Agreement terminates or until such time as Net determines that the release of the funds to [Plaintiff] is prudent, in the best interest of Net, and commercially reasonable, and that [Plaintiff's] account Net [sic] is fully resolved. Upon expiration of this 6-month period (or longer, as the case may be), any balance remaining in the Reserve Account will be paid to [Plaintiff].

Merchant Processing Agreement ¶ 7.

Defendants contend that this provision demonstrates that the purpose of the Merchant Reserve Account was to provide security to Netpaying and that it gives Netpaying the discretion to maintain the Merchant Reserve Account "as long as is required to protect Netpaying." (Dkt. 16 at 8). Thus, Defendants argue, the Complaint's allegation that the reserve funds must be returned when the "objective of the contract is fulfilled" contradicts the plain language of the Merchant Processing Agreement.

As Defendants disregard allegations in the Complaint that, favorably construed, allege that Netpaying breached the Agreement in other ways (*e.g.*, by failing to pay Plaintiff its proceeds on a bi-weekly basis), their request for dismissal of Count I is due to be denied. Moreover, favorably construed, the allegations in the Complaint are not necessarily inconsistent with the above-quoted paragraph of the Merchant Processing Agreement. That paragraph provides for payment of the balance remaining in the Merchant Reserve Account to Plaintiff upon the later of (a) the expiration of six months or (b) when Netpaying determines that release of the funds is prudent, commercially

---

[1] The Merchant Processing Agreement refers to Defendant Netpaying, Inc. as "Net." *See* Dkt. 14-1 at 1.

reasonable, and in Netpaying's best interest, and Plaintiff's account is fully resolved. This provision cannot reasonably be construed to give Netpaying unbridled discretion to withhold the funds forever if it finds that doing so would suit it interests,[2] and the Complaint sufficiently alleges that Netpaying's refusal to return the funds had nothing to do with any commercially reasonable precaution or with any reason contemplated or agreed to by the parties.

*Count II (Conversion)*

Under Florida law, conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984) (citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So. 2d 858 (Fla.1948)). "In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003) (citations omitted).

"Neither an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort." *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (citing *Advanced Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir.1985) (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970)).[3]

---

[2] *See* Merchant Processing Agreement ¶ 26 ("[E]ach party agrees to act reasonable [sic] and in good faith and to fully cooperate with each other in order to faciliate and accomplish the transactions contemplated hereby.").

[3] *See also Gambolati v. Sarkisian*, 622 So. 2d 47, 49 (Fla. 4th DCA 1993) ("A debt which may be discharged by the payment of money in general cannot form the basis for conversion."); *Rosen v. Marlin*, 486 So. 2d 623, 626 (Fla. 3d DCA 1986) ("A breach of contract to pay money in general does not constitute conversion under the law of Florida."); *Gasparini*, 972 So. 2d at 1055 ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil

However, a claim for conversion may lie even where a contractual relationship exists between the parties if the alleged conversion exists independently of an alleged failure to perform contractual duties. *See Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. 1st DCA 1996); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055-56 (Fla. 3d DCA 2008).

"Money may be the subject of a conversion only where 'it consists of specific money capable of identification.'" *Kee*, 918 F.2d at 1541 (citing *Belford*, 243 So. 2d at 648). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Belford*, 243 So. 2d at 648. "The identification requirement ensures that a fund of money *actually exists to pay a specific debt owed* and the plaintiff 'is not merely transforming a contract dispute into a conversion claim.'" *Tambourine Comercio Int'l SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009) (emphasis in original) (citing *Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. 1st DCA 1983)).

Defendants contend that Count II is barred by Florida's economic loss rule and fails to allege a specifically identifiable fund. The Court disagrees. First, although the economic loss rule[4] generally precludes a plaintiff in contractual privity with a defendant from recovering in tort for purely economic damages arising out of a breach of the parties' contract, *Indemnity Ins. Co. of N. Am. v. American Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004), the rule does not preclude recovery for torts committed independently of a contract breach, *id.* at 537 (citing *HTP, Ltd. v. Lineas Aereas*

theft.").

[4] "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of N. Am. v. American Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).

*Costarricenses, S.A.*, 685 So. 2d 1238 (Fla. 1996)).[5] Here, Plaintiff sufficiently alleges a conversion

committed independently of the alleged breach of contract. Plaintiff alleges that Netpaying's

temporary right to hold the reserve funds was created by the Agreement and expired pursuant to its

terms. If so, Netpaying had a common law duty, independent of the contract, to return the funds on

demand, and the failure to fulfill that duty constitutes the alleged conversion. *See also Burke*, 674

So. 2d at 758 (where the defendant's acts were "not merely a failure to perform, but an affirmative

and intentional act of converting the funds to his own use by allegedly stealing the monies to which

he was entrusted, there is not merely a breach of contract but a separate and independent tort.").

Second, at least as to the reserve fund, Plaintiff sufficiently alleges a specifically identifiable

fund. Although Plaintiff may not yet know with certainty the total amount of the monies converted,[6]

Plaintiff alleges that Netpaying had an obligation to maintain the unused reserve funds and deliver

them intact to Plaintiff.

### Count IV (Civil Theft)

A plaintiff must plead civil theft under Florida law by alleging the statutory elements of theft,

as well as criminal intent. *Florida Desk, Inc. v. Mitchell Int'l. Inc.*, 817 So. 2d 1059, 1060 (Fla. 5th

DCA 2002). A plaintiff must allege that the defendant "(1) knowingly (2) obtained or used, or

endeavored to obtain or use, [Plaintiff's] property with (3) 'felonious intent' (4) either temporarily

---

[5] *See also American Aviation, Inc.*, 891 So. 2d at 543 n.3 ("Intentional tort claims such as fraud, *conversion*, intentional interference, *civil theft*, abuse of process, and other torts requiring proof of intent generally remain viable . . . if the parties are in privity of contract.") (emphasis added); *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1223 n.4 (Fla. 2010) (even where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract, "the economic loss rules would not prevent the bringing of an action and recovery for intentional torts, such as, fraud, *conversion*, intentional interference, *civil theft*, abuse of process, and other torts requiring proof of intent.") (emphasis added) (citing *American Aviation*, 891 So. 2d at 543).

[6] A complaint will withstand a motion to dismiss if it sets forth "enough facts to raise a reasonable expectation that discovery will reveal evidence [of the alleged violation]." *Twombly*, 550 U.S. at 556.

or permanently to (a) deprive [Plaintiff] of [her] right to or a benefit from the property or (b) appropriate the property to [Defendant's] own use or to the use of any person not entitled to the property." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11 (providing civil remedy for theft or exploitation) & 812.014(1) (criminal theft statute).

Although a contractual relationship between the parties does not necessarily preclude an action for civil theft, *see Seymour v. Adams*, 638 So. 2d 1044, 1049 (Fla. 5th DCA 1994), the "tort of civil theft is not committed by the mere failure to pay monies contractually due," *Florida Desk*, 817 So. 2d at 1060. A failure to pay money may provide a basis for a civil theft claim only when the money is specifically identifiable, such as when taken from a "separate account or segregated fund." *In re Gen. Plastics Corp.*, 184 B.R. 996, 1001-1002 (Bankr. S.D. Fla. 1995).

Defendants contend that Count IV is barred by the Florida's economic loss rule and fails to allege a specifically identifiable fund of money. The Court disagrees. First, Plaintiff does not allege merely a failure to pay a general money obligation due under a contract. Rather, Plaintiff alleges that, Netpaying knowingly and with felonious intent converted money received from or on behalf of Plaintiff's customers to its own use. Moreover, the economic loss doctrine generally does not apply to intentional tort claims such as conversion and civil theft. *See American Aviation, Inc.*, 891 So. 2d at 543 & n.3. Second, at least as to the reserve fund, Plaintiff sufficiently alleges a specifically identifiable fund.

## Counts III & V
### (Unjust Enrichment/Constructive Trust & Money Had and Received)

A claim for unjust enrichment must satisfy the following elements: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant

has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006). "An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Henry M. Butler, Inc. v. Trizec Prop., Inc.*, 524 So. 2d 710, 711 (Fla. 2d DCA 1988). However, "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond ""S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (citing cases).

Although proof of an express contract between parties to a contract defeats a claim for unjust enrichment, "it is well-settled in this Circuit that breach of contract and unjust enrichment may be pled in the alternative." *Donnelly v. Circuit City Stores, Inc.*, No. 5:06-cv-387-Oc-10GRJ, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007).[7] Alternative pleading "allows for a plaintiff's case to proceed in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the parties." *Id.*

Under Florida law, a constructive trust may imposed as an equitable remedy[8] where there is

---

[7] *See also JI-EE Indus. Co., Ltd. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature.")); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000) ("[B]oth the Federal Rules of Civil Procedure and Florida law permit a party to allege, in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment."); Fed. R. Civ. P. 8(d)(2) & (3).

[8] *See Diamond ""S" Development Corp.*, 989 So. 2d at 697 (noting that "a constructive trust is not a traditional cause of action, but an equitable remedy that must be based upon an established cause of action.") (citing *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005)).

a wrongful taking of the property of another. *See Finkelstein v. Southeast Bank, N.A.*, 490 So. 2d 976, 984 (Fla. 4th DCA 1986). "The necessary elements for imposition of a constructive trust are: (1) a promise, express or implied; (2) a transfer of the property and reliance thereon; (3) a confidential relationship; and (4) unjust enrichment." *Abele v. Sawyer*, 747 So. 2d 415, 416 (Fla. 4th DCA 1999) (citations omitted). "A constructive trust may be imposed only where the trust res is specific and identifiable property, or can be clearly traced in assets of the defendant." *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000).

"Florida law recognizes the general rule that 'an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage.'" *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007) (quoting *Central Bank & Trust Co. v. General Fin. Corp.*, 297 F.2d 126, 129 (5th Cir. 1961)). "This quasi-contractual action is maintained based on 'the fiction of an implied promise to repay.'" *Id.* (quoting *Marshall-Shaw v. Ford*, 755 So. 2d 162, 164 (Fla. 4th DCA 2000)). "[T]he presence of an express contract precludes recovery on a quasi-contractual remedy such as money had and received." *Id.*

Defendants argue that Counts III & V should be dismissed because (1) Plaintiff has an alleged adequate legal remedy (contract damages); (2) as to the unjust enrichment claim, Plaintiff does not allege that Defendants Jugal Taneja, Mihir Taneja, or Innovative Health Products, Inc. received any benefit from Plaintiff, and Plaintiff alleges no confidential or fiduciary relationship as to the proceeds at issue ; and (3) as to the money had and received claim, Plaintiff does not allege that money was paid under a mistake of fact or obtained through fraud, imposition, extortion, or undue advantage.

-11-

To the extent Plaintiff alleges in Counts III and V the existence of an express contract between Plaintiff and Netpaying, those counts fail to state a claim against Netpaying. *See Diamond "S" Dev. Corp.*, 989 So. 2d at 697. However, Plaintiff asserts in its response that Plaintiff is pleading its unjust enrichment claims in the alternative, and, as the Court interprets the Complaint, the Plaintiff has done so. Moreover, the Complaint does not allege the existence of an express contract between Plaintiff and any Defendant other than Netpaying. Furthermore, as the Complaint alleges that Plaintiff transferred a large sum of money to be safeguarded and held in trust by Netpaying. (Dkt. 14 ¶¶ 34, 53), its allegations are minimally sufficient to state the elements of a constructive trust. However, the Court agrees that the Complaint fails to adequately identify the benefit received by the Defendants other than Netpaying. Finally, as to Count III, to the extent the claim is not duplicative of Count V, it states no independent ground for relief.

### The Individual Defendants

Defendants also allege that Counts II-V should be dismissed as to Defendants other than Netpaying because (1) apart from a conclusory allegation that the Tanejas did whatever it is they may have done in their individual capacities as well as in their capacities as officers, directors, or shareholders of Netpaying, a conclusory allegation that all Defendants were each other's agents, and the indiscriminate attribution throughout the Complaint of every act of misconduct or debt alleged to "Defendants," the Complaint does not identify the other Defendants' alleged tortious acts or the basis for the allegation (for example) that "Defendants" (three of whom were not in privity of contract with Plaintiff, and one of whom, Innovate Health Products, Inc., is not even mentioned in the body of the Complaint) "presently owe Plaintiff over $1 million in payments," Dkt. 14 ¶ 25; and (2) the Complaint contains no allegations that Netpaying was the alter ego of the stockholders or that

-12-

it was organized or employed by the stockholders for fraudulent or misleading purposes, both of which are required to support a contention that the corporate veil should be pierced, *see Molinos Valle Del Cibao, C. por A. v. Lama*, ----, F.3d ----, ----, Nos. 09-11153, 09-125872011 WL 651996, at *13 (11th Cir. Feb. 24, 2011).

In response, Plaintiff (a) contends that Counts II-V sound in tort, not in contract, (b) correctly notes that a director or officer who commits or participates in the commission of a tort is independently liable to third persons injured thereby, *see Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1277 (S.D. Fla. 2007), and (c) asserts that the Complaint's attribution of every act of misconduct to "Defendants" jointly sufficiently alleges each Defendant's participation in the acts alleged. The Court disagrees. Apart from conclusory allegations, the Complaint does not indicate how the Tanejas and Innovative Health Products committed or participated in the alleged torts and therefore does not state any plausible claim as to them or provide them with notice of the grounds on which the claims rest.

### *Defendants' Motion to Strike*

Defendants contend that Plaintiff's prayer for attorneys' fees should be stricken because the Complaint fails to identify any statutory or contractual basis for attorneys' fees. Defendants are mistaken. The Complaint expressly requests "attorneys' fees pursuant to Fla. Stat. § 772.11" (Dkt. 14 at 15), which imposes liability on an unsuccessful defendant for "reasonable attorney's fees and court costs in the trial and appellate courts."

Defendants further contend that Plaintiff's prayer for punitive damages should be stricken because (a) punitive damages are unavailable as a remedy for breach of contract or civil theft; and

-13-

(b) Plaintiff has not pleaded "intentional misconduct" or "gross negligence."[9]

In response, Plaintiff contends that Florida law allows the recovery of punitive damages for conversion. Plaintiff is correct. *See Foley v. Dick*, 436 So. 2d 139, 141 (Fla. 2nd DCA 1983) ("In suits for conversion, punitive damages are allowable where the circumstances surrounding the conversion are such as to show fraud, actual malice, deliberate violence, or oppression, such gross negligence as to indicate a wanton disregard of the rights of others, or where the wrong partakes of a criminal character.") (citing *Doral Country Club, Inc. v. Lindgren Plumbing Co.*, 175 So. 2d 570 (Fla. 3d DCA 1965)).[10]   Assuming that Fla. Stat. § 768.72(2) imposes a substantive pleading requirement on a prayer for punitive damages in a complaint filed in federal court,[11] the Complaint adequately alleges an intentional conversion made with felonious intent and with the intent required by Fla. Stat. § 768.72(2).

Finally, Defendants contend that the Court should strike Plaintiff's request for preliminary and permanent injunctive relief and Plaintiff's request for an order (i) requiring Defendants to immediately pay the funds at issue into the Court registry or (ii) appointing a receiver to take immediate possession of the funds for the duration of this lawsuit. Defendants argue that Plaintiff is entitled to no injunctive or other equitable relief because Plaintiff has an adequate remedy at law,

---

[9]   *See* Fla. Stat. § 768.72(2) ("A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.").

[10]   *See also Sporting Goods Distribs. v. Whitney*, 498 F. Supp. 1088, 1092 (N.D. Fla. 1980); *United States v. Bailey*, 288 F. Supp. 2d at 1265; *Wallace Int'l Trucks, Inc. v. Magruda Trucking Co.*, LP, No. 2:05-cv-277-FTM-34DNF, 2007 WL 842146, at *8 (M.D. Fla. Mar. 20, 2007)

[11]   In *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir.1999), *vacated in part*, 204 F.3d 1069 (11th Cir. 2000), the Eleventh Circuit held that because Section 768.72's pleading requirements directly conflict with a valid Federal Rule of Civil Procedure, *see* Fed. R. Civ. P. 8(a)(3), "the pleading requirements of Florida Statutes § 768.72 are inapplicable in federal diversity cases."

because Plaintiff is threatened with no ongoing injury, and because, although Florida law provides

by statute for prejudgment attachment or garnishment in narrow circumstances, otherwise "[t]he law

in Florida is quite clear that there is no judicial authority for an order requiring the deposit of an

amount in controversy into the registry of the court, or for any restraint on the use of the defendant's

unrestricted assets." *Central Bank of Tampa v. United States*, 833 F. Supp. 892, 897 (M.D. Fla.

1993); *cf. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)

(absent a lien or equitable interest in specific assets, a district court lacks authority to issue a

preliminary injunction preventing disposal of assets pending adjudication of a claim for money

damages).

 To the extent Defendants seeks an order striking Plaintiff's request for permanent injunctive

relief, the request is denied.  Plaintiff has adequately pleaded equitable claims that could provide a

basis for such relief.  The Court also denies Defendants' motion for an order striking Plaintiff's

request for provisional remedies.  However, the Court notes that no request for provisional remedies

is properly before the Court at this time, and no provisional remedy will be granted absent a separate,

properly supported motion that complies with  Rule 65, Local Rule 4.06, and other applicable rules.

### *Conclusion*

 Upon consideration, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

and in the Alternative Motion to Strike is **GRANTED** in part.  As to Defendants Jugal Taneja, Mihir

Taneja, and Innovative Products, Inc., Counts II-V are **DISMISSED** with leave to amend.  As to

Defendant Netpaying, Inc., Count III is dismissed with leave to amend.

 Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. 42) is **GRANTED**.

On or before **April 11, 2011**, Plaintiff shall file a second amended complaint consistent with this

-15-

Order and with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure.  Failure to comply will result in dismissal with prejudice of Counts II-V as to Defendants Jugal Taneja, Mihir Taneja, and Innovative Products, Inc. and Count III as to Defendant Netpaying, Inc.

**DONE AND ORDERED** in chambers this __23rd__ day of March, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

-16-